# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| WORTHINGTON CITY SCHOOL DISTRICT BOARD OF EDUCATION, : : : Plaintiff, : : v. : : LANCE AND SUSAN MOORE, : in their individual capacities and as : parents and guardians of C.M., a minor, : : Defendants. : | Case No. 2:20-CV-3155<br><br>Chief Judge Algenon L. Marbley<br><br>Magistrate Judge Jolson |

## OPINION & ORDER

This matter is before the Court on Plaintiff Worthington City School District Board of Education's Motion for Preliminary Injunctive Relief. (ECF No. 2). For the reasons set forth below, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction.

## I.  BACKGROUND

Defendants Lance and Susan Moore are the parents of C.M., a minor child, who all reside within the bounds of the Worthington City School District ("the District"). (ECF No. 2 at 4). C.M. is autistic and has been identified as a student with a disability pursuant to the Individuals with Disabilities Education Act ("IDEA"). (*Id.*). Plaintiff, the Worthington City School District Board of Education ("the Board"), alleges C.M. was being educated by the District until 2014, when Defendants brought their first due process complaint to the Ohio Department of Education ("ODE") alleging the District's individualized education program ("IEP") was failing to provide C.M. with free appropriate public education ("FAPE") pursuant to IDEA. (*Id.*). As a result of the complaint, the parties entered into a settlement agreement, in which the District agreed to cover the expense of sending C.M. to Bridgeway Academy. (*Id.*). At the end of the 2018 school year, the

District declined to extend the term of the settlement agreement because it believed it could fulfill its obligations to provide C.M. with FAPE. (*Id.* at 5). Defendants brought a second due process complaint in June of 2018, and C.M. returned to the Worthington City School District while the complaint was ongoing. (*Id.*). Defendants filed an amended complaint in January of 2019, alleging C.M. was still not receiving FAPE at the Worthington City School District. (*Id.*).

On June 26, 2019, the parties entered into another settlement agreement ("the Agreement"), which is at issue in this case. (ECF No. 1 Ex. 3). The Agreement provided for, among other things, C.M.'s placement at Bridgeway Academy at the District's Expense. (*Id.*). In turn, Defendants agreed to release and discharge the District from "any and all claims, demands, actions, causes of action or suits at law or in equity of whatsoever kind and nature, which [Defendants] and/or C[.M.] may have had, now have, or may now or hereafter assert against the Board and its Agents for the entire period prior to this Agreement, and during the term of this Agreement, with respect to C[.M.] and his education including but not limited to claims regarding the provision of FAPE …" (*Id.* at ¶ 17). The Agreement defined the term as "the beginning of the summer of 2019 to the end of the summer of 2024." (ECF No. 1 Ex. 3).

On February 19, 2020, Bridgeway Academy discharged C.M. from its school. (ECF No. 2 at 6). Defendants then filed another due process claim on March 5, 2020 with the ODE, alleging the District has denied C.M. FAPE by refusing to provide any programming since February 19, 2020. (ECF No. 1 Ex. 4). In their request for a due process hearing, Defendants allege any waiver "is for past claims and any services delivered by the agreed-upon service provider." (*Id.* ¶ 19). Because Bridgeway Academy "is a third party not bound by this Agreement" and "is no longer willing to provide services, the District cannot legally absolve itself of its FAPE responsibility and hide behind a now unenforceable defunct agreement." (*Id.*). Defendants alleged C.M.'s current

2

IEP fails to provide FAPE, that Bridgeway Academy was the only viable alternative, and that the District is now refusing to pay for any placement that exceeds the costs of Bridgeway. (*Id.* at ¶¶ 14-16). The Parties disagree as to the Board's level of commitment to settle the issue and provide education to C.M. The Board claims the District informed Defendants it would be willing to amend the Agreement with a different placement so long as its financial obligations did not increase. (ECF No. 2 at 6). It claims it identified three programs that educate children with autism in Central Ohio that it would pay for, though it does not allege C.M. has been accepted into any of those schools. (ECF No. 7 at 1-2). Defendants, however, contend that the Board denied any obligation to provide FAPE to C.M. pursuant to the Settlement Agreement after he was expelled from Bridgeway. (ECF No. 6 at 3). As a result of the request for a due process hearing, the impartial hearing officer ("IHO") issued an opinion on May 15, 2020 scheduling a due process hearing beginning on July 16 and stating that she did not have the authority to issue a decision on any alleged breach of contract claims relating to the Agreement. (ECF No. 1 Ex. 5).

The Board now brings claims under 20 U.S.C. § 1415(e)(2)(F) for enforcement of the IDEA settlement and for breach of contract against Defendants, in their individual capacities and as parents and guardians of C.M. (ECF No. 1). The Board brought this motion for a temporary restraining order and preliminary injunctive relief seeking an order: "(i) ordering Defendants to dismiss, without prejudice, their Due Process Complaint, Case Number SE 3856-2020; (ii) barring Defendants from accruing additional legal costs in pursuit of Defendants' Due Process Complaint, Case Number SE 3856-2020; (iii) barring Defendants from filing additional administrative complaints against the District related to C.M.'s education; and (iv) any additional equitable relief deemed fair and just by this Court." (ECF No. 2 at 15). This Court held a Rule 65.1 conference on June 25, 2020 and orally denied the Board's Motion for a TRO, finding no immediacy or

3

irreparability of harm. The Board is proceeding with its Motion for Preliminary Injunction. Defendants filed their Response in Opposition on July 2, 2020 and the Board filed its Reply on July 7. (ECF Nos. 6, 7). This Court held a preliminary injunction hearing on July 14, 2020.

## II.  STANDARD OF REVIEW

A preliminary injunction "is an extraordinary remedy never awarded as of right." *Hunt v. Mohr*, No. 2:11-CV-00653, 2012 WL 368060, at *1 (S.D. Ohio Feb. 3, 2012) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008)). Preliminary injunctive relief "should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Jones v. Caruso*, 569 F.3d 258, 265 (6th Cir. 2009) (internal quotations omitted). The "purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395, (1981). In light of its "limited purpose," a preliminary injunction is "customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 542 (6th Cir. 2007). Accordingly, a party need not prove their case in full at a preliminary injunction hearing. *Id.* But see *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000) (noting that the "proof required for the plaintiff to obtain a preliminary injunction is much more stringent than the proof required to survive a summary judgment motion").

When considering a motion for preliminary injunction, the Court balances four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by the issuance of the injunction." *Cremeans v. Taczak*, No. 2:19-CV-2703, 2019 WL 5420256, at *2–3

4

(S.D. Ohio Oct. 23, 2019) (citing *Ne. Ohio Coal. for the Homeless v. Husted*, 696 F.3d 580, 590–91 (6th Cir. 2012). These four considerations are "factors to be balanced, not prerequisites that must be met." *Certified Restoration*, 511 F.3d at 542. Whether the combination of the factors weighs in favor of issuing injunctive relief in a particular case is left to the discretion of the district court. See *Leary*, 228 F.3d at 739.

### III. ANALYSIS

This Court previously held in its TRO Order that Plaintiff had not met the requirements for a temporary restraining order based on irreparability and immediacy of harm. (ECF No. 8). The Court went on to consider the remaining preliminary injunction factors, and though not dispositive, found they also weighed against injunctive relief. (*Id.*). Plaintiff has not made substantively different arguments in its Reply or at the preliminary injunction hearing than it did in its original Motion, and for that reason and the reasons set forth below, the Court concludes Plaintiff has not met its burden to obtain a preliminary injunction.

#### A. Likelihood of Success on the Merits

The Board argues it will likely prevail in its enforcement of the Agreement under IDEA because of Defendants' breach of the waiver provisions of the contract. (ECF No. 2 at 8). The Court analyzes the Board's claim under 20 U.S.C. §1415(e)(2)(F) and its state law breach of contract claim together, since both pertain to Defendants' alleged breach of the Settlement Agreement. The Court finds Plaintiff's arguments misconstrue the terms of the Agreement and ignore the likely invalidity or impossibility of the Agreement.

This Court has held, "a settlement agreement is a contract, and as such, is enforceable under contract law principles." *Echols v. Williams*, 267 F.Supp.2d 865, 867 (S.D. Ohio 2003). In order to make out a claim for breach of contract, plaintiff must show: "(1) the existence of a contract,

(2) performance by the plaintiff, (3) breach by the defendant, and (4) damages or loss resulting from the breach." *Claris, Ltd. v. Hotel Dev. Servs., LLC*, 104 N.E.3d 1076, 1083 (Ohio Ct. App. 2018) (citing *Lucarell v. Nationwide Mut. Ins. Co.*, 97 N.E.3d 458, 469 (Ohio 2018)). Defendants assert they did not breach the terms of the Agreement's waiver and, alternatively, that the contract is rendered either null and void or impossible to perform because Bridgeway will no longer serve C.M. (ECF No. 6).

*1. Alleged breach of paragraph 17*

This Court finds the Board has not demonstrated it is likely to succeed on the merits of breach of contract claims. The Board first argues that Defendants breached paragraph 17 of the Agreement, the waiver clause. (ECF No. 2 at 10).[1] "Contract provisions which are unambiguous must be construed according to their plain, express terms." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1268 (Ohio Ct. App. 1996). The Board has not shown a likelihood of success on the merits that Defendants breached the express terms of paragraph 17 when they filed the March 2020 ODE complaint. Plaintiff argues Defendants breached the Agreement because they agreed to not do any of the following until the end of the summer of 2024: (1) bring a cause of action of any kind against the Board; (2) file a claim related to C.M.'s education or the provisions of FAPE; (3) file an action requesting the provision of compensatory education; (4) assert claims against the District regarding C.M.'s receipt of special education. (ECF No. 2 at 10-11). The Board also claims Defendants (5) agreed their discharge included IDEA claims; and (6)

---

[1] Paragraph 17 states in relevant part: "In consideration of the promises and commitments of the Board, Parents, on their own and on behalf of C[.M.], forever release and discharge the Board… from any and all claims, demands, actions, causes of action or suits at law or in equity of whatsoever kind and nature, which Parents and/or C[.M.] may have had, now have, or may now or hereafter assert against the Board and its Agents for the entire period prior to this Agreement, and during the term of this Agreement, with respect to C[.M.] and his education including but not limited to claims regarding the provision of FAPE …Parents reserve the right to bring any claim, demand, due process complaint, ODE complaint, or other action alleging that any IEP developed after the 2019-2020 IEP is not reasonably calculated to provide FAPE… This discharge of any liability includes… any and all claims arising out of Student's placement at Bridgeway Academy." (ECF No. 1 Ex. 3 at ¶ 17).

agreed their discharge included all claims arising out of C.M.'s placement at Bridgeway Academy. (*Id.* at 11).

The Board's arguments ignore the language of the contract that limits the waiver to claims related to "services provided *pursuant to this Agreement*." (ECF No. 1 Ex. 3 at ¶ 17) (emphasis added). Defendants did not file any due process complaints against the District during the period C.M. was being educated at Bridgeway Academy. Their claims against the Board do not "arise out of" C.M.'s placement at Bridgeway. Rather, Defendants explicitly limit their claim to the Board's failure to provide C.M. with FAPE from February 19, 2020 onward—the time period beginning after he was discharged from Bridgeway. (ECF No. 1 Ex. 4 at 3).

At the preliminary injunction hearing the Board continued to focus on the application of the waiver "during the Term of this Agreement," which it reads exclusively to mean through 2024. (ECF No. 1 Ex. 3 at ¶ 17). The "Term of the Agreement" does indeed contemplate the Agreement will remain in effect through 2024 because that is when C.M. was anticipated to graduate. But the Agreement further defines the "Term" as "regarding placement and services" provided. (ECF No. 1 Ex. 3). The Agreement specifies Bridgeway Academy as the placement to provide such services, and contemplates C.M. would remain there through 2024. (ECF No. 1 Ex. 3 at ¶ 6). The Board's attempt to construe the Agreement and waiver as enforceable through 2024 absent all other conditions ignores the surrounding provisions and context of the contract. Read together as an integrated whole, the "Term" contemplates the provision of educational services, which the parties designated Bridgeway to provide.

Further, the Board's argument ignores the remaining language of paragraph 17, which reserves Defendants' "right to bring any claim, demand, due process complaint, ODE complaint, or other action alleging that any IEP developed after the 2019-2020 IEP is not reasonably

7

calculated to provide FAPE." (ECF No. 1 Ex. 3 at ¶ 17). Paragraph 17 establishes C.M.'s parents' right to bring claims related to new IEPs developed after the 2019-2020 school year. (*Id.*). The Board argues in its Reply that Defendants' claims relate to the 2019-2020 IEP and that there was no other IEP developed. (ECF No. 7 at 4). But C.M.'s 2019-2020 IEP designated his placement at Bridgeway Academy. (ECF No. 1 Ex. 3 at ¶ 6). When C.M. was discharged from Bridgeway Academy in February 2020, the 2019-2020 IEP was no longer enforceable. Bridgeway was no longer providing C.M. an education and thus, C.M. was in need of a new IEP. Because Defendants' claims can logically be construed as relating to the District's failure to create a new IEP and provide FAPE after C.M.'s discharge, and not arising out of the original 2019-2020 IEP, the Board has failed to demonstrate it is likely to succeed on the merits of its claim that Defendants' breached paragraph 17. The explicit exception in paragraph 17 reserves the parents' right to bring claims related to a new IEP (or lack thereof) after the old IEP became unenforceable.

*2. Alleged breach of paragraph 9*

The Board also argues Defendants breached paragraph 9, which states "neither [Defendants] nor [C.M.] shall have the right to seek compensatory education or any other relief from District as a result of any real or perceived failures, injuries or damages caused by Bridgeway Academy or its employees." (ECF No. 1 Ex. 3 at ¶ 9). The Agreement makes clear the District is not responsible for the quality of the education C.M. received at Bridgeway "[s]ince Bridgeway Academy is the education placement at the election of the Parents." (*Id.*).

The Court concludes the Board has not shown a likelihood of success on this interpretation of the Agreement. Defendants' due process complaint does not relate to any real or perceived failures by Bridgeway. In its Reply and at the preliminary injunction hearing, the Board persisted in its argument that Bridgeway's discharge of C.M. constitutes a "failure" by Bridgeway under

8

paragraph 9, and Defendants are therefore barred from bringing any claims related to it. (ECF No. 7 at 4). The Court finds the Board has not shown a likelihood of success on the merits of this argument based on the plain language of paragraph 9 and the language of Defendants' due process complaint. Their due process claim is not about C.M.'s discharge, but about the Board's alleged "failure to provide FAPE since February 19, 2020 *following* the discharge." (ECF No. 6 at 5) (emphasis added). Defendants are not bringing a claim against the District for failure to provide FAPE *at Bridgeway*. Rather, Defendants' claim pertains to the District's "refusal to provide any services since C.M. was discharged from Bridgeway." (ECF No. 1 Ex. 4 at 5).

### *3. Impossibility of performance*

While the Court finds that Plaintiff has not demonstrated a likelihood of success on its claims that Defendants breached the express terms of the waiver provisions, the Court further concludes that, even if Plaintiff could show breach, it has not shown a likelihood of success on the merits of defeating Defendants' asserted defense.

Defendants argue C.M.'s discharge from Bridgeway makes the Agreement impossible to perform, and therefore renders it null and void. (ECF No. 6 at 6-7). Impossibility of performance is an affirmative defense to breach of contract claims under Ohio law, and can be asserted where "an unforeseen event arises rendering impossible the performance of one of the contracting parties." *Stuckey v. Online Res. Corp.*, 909 F. Supp. 2d 912, 931-32 (S.D. Ohio 2012).

The Agreement clearly contemplated that C.M. would remain at Bridgeway Academy for the duration of the Agreement (until the end of the summer of 2024). (ECF No. 1 Ex. 3 at ¶ 6). The Agreement provides: "[t]he parties further agree that for the Agreement Period, the separate facility that will provide educational services to the Student will be Bridgeway Academy". (*Id.*). Which party has the obligation to "perform" this term is not made explicit by the terms of the

9

Agreement. As the entity legally responsible for providing C.M. education, this obligation is likely the Board's, not Defendants'. But in either case, no party to the contract could perform this provision—C.M. could not be placed at Bridgeway Academy through 2024 because he was discharged in February 2020.

The Board argues the Agreement is not null and void and that contract principles permit the District to provide a comparable educational placement without voiding the Agreement. (ECF No. 7 at 4-5). This Court need not reach the question at this stage as to whether Bridgeway's discharge of C.M. rendered the Agreement null and void. Even if the District could still substantially perform the Agreement by providing C.M. a comparable educational placement, the Board has not shown a likelihood of success on the merits of the claim that it has actually done so. When placement at the old facility becomes impossible, the District maintains an obligation to "provide educational services that approximate the student's old [Individualized Education Program] as closely as possible." *Tindell v. Evansville-Vanderburgh Sch. Corp.*, No. 309CV00159SEBWGH, 2010 WL 557058, at *4 (S.D. Ind. Feb. 10, 2010) (quoting *John M. v. Board of Educ. of Evanston Tp. High School Dist. 202*, 502 F.3d 708, 714-15 (7th Cir.2007)).

Defendants dispute in the first instance the Board's claims that it offered alternative comparable educational placements to C.M. prior to July 2020. Defendants further maintained at the preliminary injunction hearing that C.M.'s educational needs changed since the Agreement was executed, which constituted an unforeseen change in circumstances, such that his educational needs and placement options need to be reassessed. On any version of these facts, the Court finds the Board has not met its burden because it has not shown evidence that any placements have actually accepted C.M., that they would be able to accommodate his educational needs, or that the District is currently educating CM in any way.

10

Finally, the Board argues Defendants cannot avail themselves of the impossibility defense because the impossibility is a result of Defendants' own actions. (ECF No. 7 at 5-6). *See Truetried Serv. Co. v. Hager*, 118 Ohio App. 3d 78, 87 (Ohio Ct. App. 1997) (defense available "where performance has been rendered impossible without [defendant's] fault and when the difficulties could not have reasonably been foreseen"). The Board argues Defendants should have entered into a separate agreement with Bridgeway to guarantee C.M.'s placement through 2024. (ECF No. 7 at 5-6). This argument is unavailing. There is no language in Agreement making the settlement contingent on Defendants' execution of a separate agreement with Bridgeway or imposing that responsibility on Defendants. The Board provides no evidence or argument that the Settlement Agreement was predicated on such a contract. They merely present the hypothetical argument that such an agreement would have prevented C.M.'s discharge and that Defendants' failure to do so made the impossibility "their making." (ECF No. 7 at 5-6). The Court is not persuaded by this argument. As the entity tasked with providing FAPE and one that regularly enters into such settlement agreements with parents, the District may desire to draft contracts that contemplate such changes in circumstances. But it is not the Court's job to decide what would have made for better contract terms as a matter of policy. The Court finds, as a matter of law, that the Board has not adequately established that Defendants bore the responsibility to foresee the need for a separate contract with Bridgeway, and thus have not shown Defendants are at fault for the impossibility.

### B.  Irreparability of Harm

The second factor the Court must consider is the irreparability of harm that Plaintiff would face absent injunctive relief. The Court addressed this factor in its Order denying Plaintiff's Motion for a Temporary Restraining Order. (*See* ECF No. 8). Finding the Board has not put forth any more

evidence about the irreparability of harm, the Court likewise finds they have failed to prove this factor at the preliminary injunction stage.

The Board raised two alleged harms in its Motion stemming from Defendant's administrative request for a due process hearing: (1) the Board will have to expend resources to defend the due process complaint; (2) the IHO could render a decision on Defendants' administrative complaint before this Court rules on the merits. (ECF No. 2 at 13). In its Reply, the Board reframed its arguments on irreparable harm, claiming (1) they will not receive the benefit of the Agreement absent an injunction while Defendants have already received their benefit; and (2) they could receive a "contrary" ruling from the IHO without being able to rely on the Agreement as a defense. (ECF No. 7 at 6-7).

As this Court previously held, Plaintiff "failed to meet its burden of demonstrating irreparability of harm because expending resources on legal fees as a matter of law does not constitute irreparable harm." (ECF No. 8 at 5). Harm generally is not irreparable if it is fully compensable by money damages and the prospect of expending resources to defend an action does not amount to irreparable harm just because the Board believes that action lacks merit. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992). The Board argues monetary damages alone may be irreparable if they are unlikely to be recovered. (ECF No. 7 at 8). However, even the supporting case law Plaintiff cites for this proposition requires the harm be "certain and great." *Clarke v. Office of Fed. Hous. Enter. Oversight*, 355 F. Supp. 2d 56, 65 (D.D.C. 2004). The Board has not demonstrated its expenses are certain, great, or unlikely to be recovered if they prevail. Defendants correctly assert that, even in the event of a monetary judgment against Defendants, the Board would continue to have a legal remedy and could collect a judgment in other ways, like through garnishment. The Board's damages are speculative at best. Moreover, as

Defendants correctly argue, any "burden" on Plaintiff to expend resources pursuant to the requirements of IDEA is one imposed by Congress. (ECF No. 6 at 9) (citing *Florence County School District Four v. Carter*, 510 U.S. 7, 15 (1993) ("Congress has imposed a significant financial burden on the States and school districts that participate in IDEA")). Such a financial burden on the District that it incurs as a result of its routine legal obligations is not an irreparable harm.

Likewise, the threat of an adverse outcome from the results of a due process decision would only impose a financial burden on the Plaintiff, potentially in the form of requiring the District to provide more services to C.M., subsidize an alternative educational placement, or pay Defendants' attorneys' fees. The Board has failed to demonstrate how speculative financial obligations resulting from a potential IHO determination are irreparable. The Board's argument that it will not receive the benefits of the Agreement absent an injunction while Defendants have already received their benefit is also unpersuasive. Both parties received the agreed-upon benefits until C.M. was discharged from Bridgeway—C.M. received the benefit of education at his placement of choice and the District received the benefit of Defendants' waiver. Defendants did not bring any claims against the District while C.M. was placed at Bridgeway. Now Defendants and C.M. are not receiving any benefits from the District whatsoever. C.M. is not at Bridgeway or a comparable alternative placement. There is no evidence the District has paid for or provided *any* education to C.M. since February 2020. Thus, Plaintiff's situation bears no resemblances to those cases in which one party to a contract would be unjustly enriched absent an injunction.

### C. Harm to Others

The Court also considers the potential harm to others by granting injunctive relief. *See United Food & Commercial Workers Union, Local 1099 v. Southwest Ohio Regional Transit*

*Auth.*, 163 F.3d 341, 363 (6th Cir.1998). The Board "is required to show through clear and convincing evidence that granting a preliminary injunction would not harm third parties." *Youngstown City Sch. Dist. Bd. of Educ. v. State*, 104 N.E.3d 1060 (Ohio Ct. App. 2018). The Court finds the Board has not met this burden.

The Board attempts to argue a preliminary injunction will have no negative effects on Defendants or C.M. because they entered the Agreement willingly and the Board has offered to provide comparable educational placements for C.M. (ECF No. 2 at 13). As this Court held in its TRO Order, "[t]his argument is unpersuasive, and presupposes the merits of Defendants' due process complaint, in which they allege Bridgeway Academy was the only acceptable alternative placement for C.M. and it is no longer willing to provide services. Any potential liability or financial harm to the District does not amount to irreparable harm and does not outweigh the potential harm to C.M. in barring his ability to enforce his federal rights through the administrative complaint process." (ECF No. 8 at 10). As Defendants argue, the harm to C.M.—a child with a disability who is currently deprived of educational services—is not compensable by monetary damages. (ECF No. 6 at 11). While the harm to the Plaintiff is speculative and merely financial in nature, the potential harm to the C.M. and his ability to access education is great.

### D.  Public Interest and Balance of Factors

The final factor, the public interest, also weighs in favor of denying Plaintiff's motion for a preliminary injunction. Plaintiff argues the public interest favors enforcement of settlement agreements, while Defendants argue an injunction would be contrary to the purpose of IDEA. (ECF No. 7 at 9; ECF No. 6 at 13).

As this Court explained above, Plaintiff has not demonstrated a likelihood of success on the merits of its claims that Defendants have breached the contract or that the contract is still

enforceable. Furthermore, as the Court held in its TRO Order, "the public has a strong interest in ensuring students with disabilities have access to education and the ability to enforce their rights." (ECF No. 8 at 10). IDEA represents the "congressional purpose of providing access to a free and appropriate education." *Hendrick Hudson Dist. Bd. of Ed. v. Rowley*, 458 U.S. 176 (1982). The terms of the Agreement intended to satisfy FAPE were predicated on C.M.'s placement at Bridgeway. C.M. has been discharged and is no longer receiving an education at Bridgeway, or anywhere else. An injunction barring Defendants from filing a due process complaint against the District leaves C.M. without a remedy to enforce this right.

## IV. CONCLUSION

For these reasons stated above, the Court **DENIES** Plaintiff's motion for preliminary injunctive relief. (ECF No. 2).

**IT IS SO ORDERED.**

**ALGENON L. MARBLEY**
**CHIEF UNITED STATES DISTRICT JUDGE**

**DATE: July 15, 2020**